# Keown *v.* Mallissee, Appellant.

*Landlord and tenant—Holding over—Trespass—Damages—Injunction.*

1. Where a tenant holds over after the termination of his lease, and the landlord obtains a judgment of ouster against him in proceedings under the landlord and tenants act to recover possession, the recovery of the judgment indicates an election on the part of the landlord to consider the occupant as a trespasser, and thereafter the landlord may maintain an action of trespass to recover damages for the use and occupation of the land from the date of a judgment of ouster; and the fact that after the judgment of ouster was entered the tenant secured a preliminary injunction to stay further proceedings, and that the injunction was dissolved on final hearing, will not defeat the landlord's right to maintain the action of trespass or force him as his only remedy to bring an action on the injunction bond.

2. In such a case where it appears that the tenant holding a mortgage on the premises had foreclosed the mortgage, and in the foreclosure suit the landlord had set up as a counterclaim the same damages which he claimed in the action of trespass, and the court had disallowed the claim as not a proper set-off inasmuch as it was in tort, such adjudication in the foreclosure suit is not an adjudication of the cause of action set up by the landlord in his trespass suit.

3. In an action of trespass brought by a landlord to recover damages for a wrongful holding over, a judgment will not be reversed because the plaintiff offered some evidence as to the damaged condition of the property without placing value on the damage, where it appears that the trial judge expressly limited the recovery to the rental value, and the verdict indicated that the jury had followed such instruction.

Argued April 16, 1914.   Appeal, No. 77, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., First Term, 1910, No. 382, on verdict for plaintiff in case of William Keown v. Henry W. Mallissee.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Trespass for the wrongful holding over.   Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

This plaintiff was the owner of a piece of land in the city of Pittsburg, on Eva street, and on that land was erected a stable with some twenty-six stalls in it. [The defendant occupied those premises as a tenant, and in October of 1907 the plaintiff in this case, the landlord, gave to the defendant a notice to quit, and to terminate the lease. Not having complied with that notice, proceedings were had before an alderman in the city, and judgment of ouster was rendered against the tenant, who is the defendant here, in December of 1907. That was the end of that proceeding unless it was appealed from, and there was no appeal, and that judgment now becomes a final judgment, and is conclusive of all questions involved, so far as the relationship of these parties was concerned in regard to the ownership and occupancy of that property. From that time forward the defendant in this case had no right to occupy those premises; he was in law a trespasser, and had no right to occupy the premises. This plaintiff then, after about two years— twenty-three months or so—brings this suit to recover his damages for the use and occupation of the premises by the defendant. Now that is the only question in this case. What are his damages for the use and occupation, by the defendant, of that stable on the plaintiff's land?] [4]

Verdict and judgment for plaintiff for $1,129.34. Defendant appealed.

*Errors assigned* among others was portion of opinion as above, and various rulings on evidence referred to in the opinion of the Superior Court.

*E. J. Kent,* for appellant.—For damages caused by the injunction itself the remedy is upon the injunction bond. Where plaintiff desires to go farther and recover outside of the bond he must show malice and want of probable cause: Hutchins v. Rogers, 22 W. N. C. 79;

Russell v. Farly, 105 U. S. 433; St. Louis v. St. Louis Gas Light Co., 82 Mo. 349; Lawton v. Green, 64 N. Y. 326; Cayuga Bridge Co. v. Magee, 2 Paige, 116; Gorton v. Brown, 27 Ill. 489.

The claim was adjudicated: Muirhead v. Kirkpatrick, 2 Pa. 425; Chandler's App., 100 Pa. 262; Walker v. Philadelphia, 195 Pa. 168; Penna. R. R. Co. v. Davenport, 154 Pa. 111; Cochran v. Cutter, 18 Pa. Superior Ct. 282; Allen v. International Text Book Co., 201 Pa. 579.

*Walter Lyon,* with him *Harry R. Bunton* and *Stanley Lyon,* for appellee, cited: Caldwell v. Walters, 22 Pa. 378; Means v. Presbyterian Church, 3 Pa. 93; Large v. Steer, 121 Pa. 30; Reap v. Scranton, 7 Pa. Superior Ct. 32.

OPINION BY KEPHART, J., July 15, 1914:

The plaintiff was the owner of a property situate in the city of Pittsburg, on which was erected a livery stable. He made an oral lease of the stable to the defendant, and on October 26, 1907, notified the defendant to quit the possession on or before November 30, 1907. The defendant having failed to comply with this notice, proceedings were instituted before an alderman under the Landlord and Tenant Act to recover possession of the premises, and judgment of ouster was rendered on December 9, 1907. The defendant filed a bill in equity and a preliminary injunction was granted on December 13, 1907, restraining further proceedings before the alderman. The bill was dismissed on final hearing and the injunction was dissolved. This judgment was affirmed by the Supreme Court on November 5, 1909, and possession was delivered to the plaintiff on November 18, following. Immediately thereafter this suit was instituted. The plaintiff's statement, after reciting the facts, avers: "That the defendant has wrongfully and against the consent of the plaintiff retained possession

of the said premises from November 30, 1907, until
November 18, 1909. . . . That the wrongful act of
the defendant in retaining possession as aforesaid was
willful and malicious and in wanton disregard of the
plaintiff's right. . . . That the plaintiff therefore claims
of the defendant damages . . . . (1), compensation for
damages sustained by reason of the defendant's wrongful
act in retaining possession as aforesaid, viz., $2,500,
being the reasonable value of the use and occupation
of the premises from November 30, 1907, to Novem-
ber 18, 1909." Other items of damages were contained
in the plaintiff's statement but were not pressed at
the trial. The defendant owned a mortgage against
this same property in the sum of $3,500 and upon fore-
closure the plaintiff (then defendant) interposed a de-
fense of set-off and counterclaim covering substantially
the claim as hereinabove recited and now sued upon.
The defendant (then plaintiff) obtained a rule for judg-
ment for want of a sufficient affidavit of defense, aver-
ring that a suit in trespass (being the case now before
us) had been instituted in the court of common pleas
of Allegheny county to recover this same claim for
damage, and being a tort was not a proper set-off in
an action on a scire facias sur mortgage. The trial
court made the rule for judgment for want of a suffi-
cient affidavit of defense absolute. Appellant averred,
at the trial of the case here appealed, that this action
of the court was an adjudication of the claim. On
June 10, 1913, in the case before us, the jury returned
a verdict in favor of the plaintiff for $1,129.34, upon
which judgment was entered.

The following questions are presented for our deter-
mination by the assignments of error:

First. Does the declaration disclose a good cause of
action in trespass?

Second. Did the bond given in the injunction pro-
ceedings supersede any right of action which the plain-
tiff might have had, and was the landlord's remedy ex-

clusively upon the injunction bond for use and occupation of the freehold during the injunction period?

Third. Was the action of the court below in the foreclosure proceedings, in making the rule for judgment for want of a sufficient affidavit of defense absolute, an adjudication of the plaintiff's claim?

Some minor questions as to the admissibility of evidence, growing out of these questions, will be considered in the course of this opinion.

First. It is well-settled law in Pennsylvania that where a tenant holds over after the termination of his tenancy, the landlord may recover in some form of action for the use and occupation of the land, during the period the possession is wrongfully withheld. In the proceedings under the Landlord and Tenant Act to recover possession, this damage was assessed by the alderman to the date of rendering judgment. The present claim arises from that date and was so limited by the trial court. The form of action for the claim is a matter of election on the part of the landlord. If he chooses to treat the holding over as one of tenancy, he may sue in assumpsit for the use and occupation of the land: Williams v. Ladew, 171 Pa. 369; Hemphill v. Flynn, 2 Pa. 144. If, however, the landlord, by some act of his, elects to regard the occupier as a trespasser, he cannot recover in assumpsit on the ground of an implied contract, for the landlord having determined the status of the occupant as that of a trespasser, there is no room left to presume a contract. The tort committed by the occupier was not waived and the landlord, having determined in what light he shall treat this question, the matter is settled and he must abide by his own decision: National Oil Refining Co. v. Bush, 88 Pa. 335; McCloskey v. Miller, 72 Pa. 151.

When the plaintiff notified the defendant of his desire to regain possession of the premises and on the failure of the defendant to deliver possession, the landlord immediately instituted proceedings to recover the posses-

sion which was followed by a judgment of ouster: this was a clear, unequivocal act on the part of the landlord which negatived any idea of regarding the occupier as a tenant, and was an election of the landlord to hold the defendant as a trespasser: Hemphill v. Tevis, 4 W. & S. 535. Where the occupier is so regarded, the remedy for the unlawful withholding of the property for its use and occupation would be trespass: National Oil Refining Co. v. Bush, supra; McCloskey v. Miller, supra.

It has been urged by the appellee that the action can be sustained as trespass for mesne profits. This action is an emanation from the action of ejectment and carries with it the idea that ejectment is necessary to support it. Being equitable in its nature, the owner is presumed to be invested with possession from the time of the wrongful entry of the trespasser and entitled to recover for all trespasses committed from the time of ousting: Means v. Presbyterian Church, 3 Pa. 93; Zimmerman v. Eshbach, 15 Pa. 417; Carman v. Beam, 88 Pa. 319; Caldwell v. Walters, 22 Pa. 378.

It has been held, however, that an action of ejectment is not necessary to support an action of trespass for mesne profits; that this latter action could be maintained when the plaintiff gained possession of the premises in any lawful manner "to the same extent that could have been done had he been put into the possession by reason of a recovery in ejectment:" Reid v. Stanley, 6 W. & S. 369.

Where a defendant held over after a sheriff's sale and notice given, and surrendered possession without ejectment or proceedings to obtain the possession before two justices, it was held: "For the occupation and use of the premises, the decedent was undoubtedly bound to make compensation, and whether this be called mesne profits, or damages, or could be recovered in an action on the case for use and occupation, is entirely immaterial:" Stockton's App., 64 Pa. 58. While this proceed-

ing was before the orphans' court in the distribution of an estate, its reasoning is applicable to the practice as it then existed.

The trial court regarded this statement in trespass as sufficient to cover an action for the use and occupation of the land and in this he was not in error. The purpose of the law being to secure substantial justice, the action can be so molded regardless of its mere technicalities: Zimmerman v. Eshbach, supra. And when the action was in assumpsit for use and occupation, Justice GORDON, in Grove v. Barclay, 106 Pa. 155, says: "The plaintiffs ought to have had a verdict had those facts been properly submitted, nor would it matter whether such verdict was rendered upon a count in assumpsit or in case, and in order to provide for an alternative of this kind the amendment proposed by plaintiffs ought to have been allowed."

Second. The purpose of an injunction bond may be stated in the language of the Act of May 6, 1844, P. L. 564, sec. 1, to be "conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction," and only such damages can be recovered that "flow directly from the injunction as its immediate consequences," such that arise from the invasion of the vested legal rights of the party enjoined: Sensenig v. Parry, 113 Pa. 115.

We agree with the counsel for the appellant that for all damages caused by the injunction itself the remedy is on the injunction bond: Russell v. Farley, 105 U. S. 453; St. Louis v. St. Louis Gas and Light Company, 82 Mo. 345; 1 Joyce on Injunctions, sec. 176, p. 291.

The defendant was a trespasser before the injunction was issued. The right of action for use and occupation commenced from the date of the judgment of ouster. If damages for use and occupation could be recovered on the injunction bond, the recovery could not reach back to the time when the defendant began his trespass, or include his holding over after final judgment in the

equity proceedings; and for this period of time the plaintiff had an undoubted right to an action of trespass. The injunction did not provoke the trespass or wrongful holding of the possession which caused the damage to the plaintiff. It is true it suspended the plaintiff's right to a writ to forcibly oust the defendant from possession, and it served to continue the existing wrongful possession of the defendant until the injunction proceedings were determined. This was the office of a preliminary injunction, to maintain the existing status until the merits of the controversy could be heard and determined: Fredericks v. Huber, 180 Pa. 572; Audenried v. Phila. and Reading Railway, 68 Pa. 370. It is not the policy of the law to force upon parties unnecessary litigation; and where in one form of action, which attaches to the subject-matter in controversy, all the damages complained of can be recovered, that action will be sustained. The statutory remedy on the bond would not supersede or cause that action to merge in an action on the bond. Plaintiff might have brought an action on the bond and the fact that he had already an action pending for trespass for use and occupation would not defeat his right to recover on the bond. "In a suit upon an injunction bond filed in proceedings to enjoin an action for the recovery of real estate before a magistrate, it is no defense that the defendants in the bill proceeded pending the injunction in actions of ejectment for mesne profits in the court of common pleas:" Large v. Steer, 121 Pa. 30. Justice PAXSON, in the same case, says: "If the injunction was wrongfully issued and they have been injured thereby, they cannot be deprived of the benefit of this security because the wrongdoer may be proceeded against in another form for mesne profits." Equity has jurisdiction in a proper case to restrain proceedings under the Landlord and Tenant Acts of 1772 and 1863: Denny v. Fronheiser, 207 Pa. 174. Even if such proceedings would be in effect an appeal or certiorari (we do not

so decide) from the judgment of the magistrate which, upon final hearing, was dismissed, it would not change the character of the defendant's holding nor would it relieve him of the consequences of his act. · Had the defendant, upon a judgment of ouster, surrendered the possession, this action could not have been sustained. If he chose to continue the contest from the time from which it had been decided that he was in the wrongful possession of the property, at which time he became a tort feasor, his continuance of the contest was at his own hazard; it would not relieve him from responding in damages during the contest: Zimmerman v. Eshbach, supra. In this connection the defendant offered in evidence the record of the injunction proceedings. The court below, on objection, refused to admit this record. In view of what we have said with reference to the form of action and the purpose for 'which the record was offered, it was properly excluded.

Third. As to this question, the trial court, in sustaining the motion for judgment for want of a sufficient affidavit of defense, decided that the claim was not such a set-off or defalcation as contemplated by the act of 1705. It did not adjudicate the claim but compelled the plaintiff to abandon his defense to the mortgage and resort to some other remedy to enforce the claim. The plaintiff was surely entitled to recover in some form of action: Reap v. Scranton, 7 Pa. Super. Ct. 32; Weigley v. Coffman, 144 Pa. 489; Ahl v. Rhoads, 84 Pa. 319.

Exception was taken to the admission of some evidence with respect to damage done to the property as not being a proper measure of damages. This evidence, produced by the plaintiff, recited the condition of the property, some broken window panes and two of the stalls made into a box stall. No value was placed on this damage and the trial court, in its charge to the jury, expressly limited the recovery to the rental value of the property. The jury's attention was directed to

this throughout the charge and their verdict being "for the plaintiff in the sum of $40.50 per month rental," indicated that they followed this instruction. The admission of this evidence did the defendant no harm and the jury were entitled to know the condition in which the property was turned over.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.